UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA KEITH DAVIS,

       Petitioner,

                                CASE NO. 03-CV-73306-DT
v.                              JUDGE ARTHUR J. TARNOW
                                MAGISTRATE JUDGE PAUL J. KOMIVES

KURT JONES,

       Respondent.
                             /

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       B.    *The State Court Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
             1.    *The Motion to Suppress* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
             2.    *The Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
       C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
       D.    *Miranda Claim (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
             1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
             2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
       E.    *Ineffective Assistance of Counsel Claim (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
       F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should conclude that petitioner is not entitled to habeas relief on his second claim, alleging ineffective assistance of counsel, and the Court should deny the petition with respect to this claim. The Court should also conclude, however, that an evidentiary hearing is necessary to resolve petitioner's first claim, alleging a violation of his rights under *Miranda*. Accordingly, the Court should appoint counsel for petitioner and conduct an evidentiary

hearing on this claim pursuant to Rule 8, 28 U.S.C. foll. § 2254.

II.   REPORT:

A.   *Procedural History*

    1.    Petitioner Joshua Keith Davis is a state prisoner, currently confined at the Carson City Correctional Facility in Carson City, Michigan.

    2.    On March 13, 2000, petitioner was convicted of one count of second degree murder, MICH. COMP. LAWS § 750.317, following a bench trial in the Wayne County Circuit Court. On April 13, 2000, he was sentenced to a term of 28-70 years' imprisonment.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.    WHERE A CRUCIAL POINT CONTESTED AT THE WALKER HEARING WAS WHETHER JOSHUA DAVIS HAD SAID HE WANTED TO TALK TO A LAWYER AND DEFENSE COUNSEL ASKED THE ONLY DISINTERESTED WITNESS AT THE HEARING IF DAVIS HAD SO REQUESTED, THE CIRCUIT JUDGE REVERSIBLY ERRED IN SUSTAINING THE PROSECUTOR'S OBJECTION TO THE TESTIMONY AND IN DENYING DAVIS'S MOTION TO SUPPRESS.

    II.    ADMISSION AT TRIAL OVER DEFENSE OBJECTION OF JOSHUA DAVIS'S STATEMENT ON THE AFTERNOON OF JUNE 28 VIOLATED MICHIGAN STATUTES AND DAVIS'S CONSTITUTIONAL RIGHTS BECAUSE DAVIS WAS ARRESTED BY THE DETROIT POLICE ON JUNE 25 AND NOT ARRAIGNED UNTIL JUNE 29.

    III.    THE CIRCUIT JUDGE VIOLATED DEFENDANT DAVIS'S RIGHT TO PRESENT A DEFENSE AND REVERSIBLY ERRED IN REFUSING TO REOPEN THE WALKER HEARING ON THE ISSUE OF THE DELAY IN ARRAIGNMENT BEING USED AS A TOOL TO EXTRACT AN INCRIMINATING CONFESSION FROM DAVIS.

    IV.    IN HIS MOTION TO SUPPRESS AND AT THE WALKER HEARING, MONSEY WILSON, JOSHUA DAVIS'S FIRST COUNSEL, WAS INEFFECTIVE IN NOT RAISING THE ISSUE OF THE DELAY IN ARRAIGNMENT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Davis*, No. 227330, 2002 WL 1747966 (Mich. Ct. App. July 23, 2002) (per curiam).

4. Petitioner sought leave to appeal these three issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Davis*, 658 N.W.2d 486 (2003).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 29, 2003. As grounds for the writ of habeas corpus, he raises the first and fourth claims that he raised in the state courts.

6. Respondent filed his answer on February 18, 2004. He contends that petitioner's first claim is barred by petitioner's procedural default in the state courts, and that both claims are without merit

B. *The State Court Proceedings*

Petitioner was charged with first-degree felony murder in connection with the carjacking and shooting of Monique Trotty in the early morning hours of June 23, 1999. Petitioner was alleged to have committed the crime with Richard Kimble, who was also charged, and Devon "Baby Joe" Davis, who was never tried. Petitioner made two statements to the police at police headquarters, one on June 25, 1999, and the other on June 28, 1999.

1. *The Motion to Suppress*

Prior to trial, petitioner moved to suppress his statements on the basis that the police had interrogated him after he had invoked his right to counsel, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny. Prior to trial, the trial court held an evidentiary hearing on the matter pursuant to *People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965). The substance of the

testimony presented at the *Walker* hearing is accurately summarized in petitioner's brief to the

Michigan Court of Appeals:

> Officer Steven Allen testified that he had been investigating the carjacking and the death of Monique Trotty, and had received information from another officer that Rex Bradley knew someone who had been present when the shooting occurred. EH 5-7.[1] Officer Allen met Mr. Bradley at a Burger King at about 6:00 p.m. on Friday, June 25, 1999. EH 8-9. At that time, the police had some leads in the case, but had no leads mentioning Joshua Davis. EH 23. After Allen and Bradley talked for a while, Joshua Davis also came in the restaurant. At that point Davis was not under arrest, and he talked with Allen for about an hour and a half. EH 10-11. Officer Allen decided that Davis was involved in the crime and told Davis that he had to come downtown to make a formal statement in writing. EH 12-13. Officer Allen denied that Mr. Davis asked for a lawyer or said that he did not want to go downtown without a lawyer. EH 27. At the homicide division at police headquarters at 1300 Beaubien, Joshua Davis waived his *Miranda* rights and made an oral and written statement. EH 14-16.
> Officers Michelle Jones and Michael Russell testified that they interrogated Joshua Davis at police headquarters at about 1:15 in the afternoon on Monday, June 28. EH 38. Mr. Davis waived his *Miranda* rights and made an oral and written statement. EH 37-45. He did not ask for a lawyer. EH 46.
> Rex Bradley and Defendant Joshua Davis testified for the defense at the suppression hearing. Mr. Bradley said that at his office at a cellular telephone company Davis had said that he wanted help. Mr. Davis told Bradley that he knew about the carjacking, but that he had not been involved in the killing and had not even known that a woman had been murdered until he saw it the next day on the news. EH 48-50. Mr. Bradley advised Davis to talk to the police and that if he was not directly involved he should not have a problem, EH 49, and then arranged with Officer Allen for the meeting at the Burger King. EH 50-51. Defense counsel asked if during the conversation at the Burger King, "did Josh say anything about a lawyer?" EH 53. The prosecutor objected on hearsay grounds that "anything that Josh said about a lawyer should come from Josh. ... [H]e can't introduce his own statement, it has to be against somebody. It's not against himself." *Id*. The trial judge ruled, "I agree. So, I sustain the objection." *Id*.
> On cross-examination by the prosecutor, Rex Bradley admitted that Joshua Davis had not said that he wanted a lawyer before the meeting at the Burger King. EH 57-59. However, without any question being asked by the prosecutor, Mr. Bradley slipped in the statement, "He did that during the meeting," which annoyed the prosecutor, and she responded, "I know that you want to just interject that , ..." EH 59.

---

[1]"EH" refers to the Evidentiary Hearing Transcript dated November 5, 1999.

4

> Defendant Joshua Davis testified that when he had talked with Officer Steven Allen at the Burger King he had asked for a lawyer at about thirty or forty minutes into their conversation. EH 75-76, 92-93. He had tried to leave the restaurant but was blocked by other police officers, so he told Allen, "I want a lawyer. If I'm not under arrest, but I can't leave, I would like to have a lawyer present." EH 76. He asked Mr. Bradley to get in contact with the lawyer Bradley had on standby. EH 76-78. He also said that he asked for a lawyer when he was interrogated by Officers Jones and Russell. EH 89-90.
> 
> In rebuttal the prosecutor recalled Rex Bradley, who testified that he had told Joshua Davis that he had the means to have a lawyer for Davis, but that he did not have a particular lawyer at the time. EH 94-95.
> 
> Defense counsel argued that Joshua Davis had wanted a lawyer and had asked for one, but was not given one. EH 74, 99. Counsel asked "that both statements be suppressed." EH 99.
> 
> The Circuit Judge denied the motion to suppress, finding that Joshua Davis's statements were voluntarily made. EH 99-101. She also found, "the defendant never requested a lawyer at any time." EH 100.

Def.'s Br. on Appeal, in *People v. Davis*, No. 227330 (Mich. Ct. App.), at 2-4 [hereinafter "App. Br."].

On the first day of trial, petitioner's new trial counsel filed a second motion to suppress. Counsel argued that petitioner's second statement to the police was involuntary due to the length of delay between the arrest and that statement. The trial judge denied the motion, ruling that "as far as I'm concerned, that issue has already been litigated and the Court has made a decision, and so it is untimely at this time." Trial Tr., dated 3/8/00, at 6.

2.  *The Trial*

Petitioner was tried jointly with codefendant Richard Kimble. Prior to the start of trial, both petitioner and Kimble waived their rights to a jury, and the case was tried to the judge. The trial testimony is again accurately summarized in petitioner's appellate brief:

> Victor Caldwell testified that he and Monique Trotty drove home at about 2:30 in the morning on Wednesday, June 23, 1999. Ms. Trotty was driving Mr. Caldwell's white Oldsmobile, with Caldwell sitting in the passenger seat and holding their one-year-old son. T 3/8/00, pp 40-43. The car had special Dayton rims. *Id*.,

at 42, 60. They were in the driveway and Mr. Caldwell was gathering food to get out of the car when he saw a shadow. Someone hit the driver's window with a gun and said to get out of the car. Mr. Caldwell heard a gunshot and the driver's window shattered. Ms. Trotty got out of the car, as did Mr. Caldwell with their son, and then Caldwell saw his car being backed out of the driveway and driven away. *Id*., at 45-51. He took his son into the house, told his mother to call the police, and then went back outside. Monique Trotty said that she was hit, and Victor Caldwell could see that she had a bullet hole in her left shoulder. *Id*., at 51-52. Mr. Caldwell testified that he could not identify the man with the gun, other than that he was a black male about 17 to 25 years old, had a medium build, and had a beard. *Id*., at 52-54.

Lakiya Bryant, Richard Kimble's girlfriend, testified that she was at home one evening in June when Joshua Davis and Devon "Baby Joe" Davis brought some gold tire rims to her house to store in her basement. T 3/9/00, pp 28-30, 47. She said that Mr. Kimble was there at the time, but claimed that he had nothing to do with the rims. *Id*., at 30, 47, 56.

Officer Michelle Jones read into the record the statement made by Richard Kimble on the evening of June 28, 1999, detailing his shooting of Monique Trotty and his remorse at having done so. T 3/9/00, pp 86-91. He stated that he and "Joshua and Jigger" saw a car with Dayton rims and followed it until it pulled into a driveway. *Id*., at 88-89. Mr. Kimble walked up to the driver's window, knocked on it, and told the woman to get out. He said that he fired his pistol into the car in order to scare her and that he did not know he shot her until he saw it on the news the next day. *Id*., at 89-90, 105-107. When defense counsel for Joshua Davis objected that Kimble's confession should not be considered as evidence against Davis, the prosecutor agreed that it would not. *Id*., at 91-92, 108.

As he had at the evidentiary hearing, Officer Steven Allen testified about questioning Joshua Davis on Friday, June 25, 1999, at police headquarters at 1300 Beaubien. T 3/9/00, pp 114-115. Officer Allen read into the record Davis's statement of June 25. In that statement Davis said that he had given "Snoop" and "Joe", i.e., Richard Kimble and Devon Davis, a ride to a house near Seven Mile Road, left them off, and drove away. Mr. Davis did not hear any shooting and had not known that Snoop had a gun. Only later did he learn of the carjacking and killing. *Id*., at 115-118.

Officers Michelle Jones and Michael Russell testified about interrogating Davis at police headquarters on the afternoon of Monday, June 28. T 3/9/00, pp 127-128, 137; T 3/13/00, pp 5-6. Officer Russell read into the record Davis's June 28 statement, in which he admitted that he had been with Joe and Snoop looking for a car with tire rims that they could sell. They followed the white Oldsmobile with the gold Dayton rims until it pulled into a driveway. Joe and Snoop got out of Davis's car, and Davis was waiting for them to pull off in the white car when he heard a gunshot. Joshua Davis also admitted that he had known Snoop had a gun because Snoop had shown it to him as they were driving around. T 3/9/00, pp 129-132.

No witness testified for either defendant at trial. See T 3/13/00, pp 26, 44.

App. Br., at 5-7.  The trial judge ultimately found both petitioner and Kimble guilty of the lesser offense of second degree murder, and Kimble additionally guilty of possessing a firearm during the commission of a felony.  The judge acquitted both petitioner and Kimble of the carjacking charge.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

7

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements

8

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Miranda Claim (Claim I)*

Petitioner first contends that his Fifth Amendment rights under *Miranda* were violated by the introduction of his statements to the police at trial. More specifically, petitioner contends that the trial court violated his rights by excluding Bradley's testimony that petitioner had requested an attorney at some point during the meeting with Officer Allen at the Burger King. The Michigan Court of Appeals rejected this claim. The court agreed with petitioner that, "[b]ecause a suppression hearing concerns a preliminary question regarding the admissibility of evidence, the rules of evidence do not apply" and the trial court erred in rejecting Bradley's testimony on the basis of the hearsay rules. *Davis*, 2002 WL 1747966, at *1, slip op. at 1.[2] Nevertheless, the court held that

---

[2]Although not noted by the court of appeals, the trial court's ruling was erroneous for a second reason: even if the rules of evidence were applicable, Bradley's testimony was not inadmissible hearsay. Under Rule 801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MICH. R. EVID. 801(c). Further, "statement" is defined as "an oral or written assertion[.]" MICH. R. EVID. 801(a). Here, petitioner's request for counsel is not a statement because it does not assert anything; it is merely a request which "contains no assertion. It is incapable of being true or false. It is a command, not an assertion, and cannot be hearsay because it doesn't qualify as a 'statement.'" *People v. Jones*, 228 Mich. App. 191, 204-05, 579 N.W.2d 82, 87 (1998). Further, even if the request can be considered a statement, it was not offered to prove the truth of the matter asserted. Bradley's testimony was offered to "verify only the fact that the request was made, rather than going to the truth or falsity of the statement." *United States v. King*, 75 F.3d 1217, 1222 (7th Cir. 1996); *see also*, *Anderson v. United States*, 417 U.S. 211, 219-20 (1974) (out-of-court statements offered "simply to prove that the statements were made" are not hearsay); *People v. Harris*, 201 Mich. App. 147, 151, 505 N.W.2d 889, 891 (1993) ("Where a

9

petitioner was not entitled to relief on this claim because the error was harmless:

> Significantly, however, the witness offering the disputed testimony later interjected that defendant asked for an attorney when he was detained by the police. Because the information was subsequently received, defendant was not prejudiced by the court's erroneous ruling. Moreover, despite the witness' and defendant's own testimony that defendant requested a lawyer, the court made a credibility determination and concluded that defendant 'never requested a lawyer at any time."

*Id.*, slip op. at 1-2. The Court should conclude that this determination was not reasonable, and that an evidentiary hearing is necessary for a proper resolution of petitioner's *Miranda* claim.

1.  *Clearly Established Law*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court considered the applicability of the Fifth Amendment's Self-Incrimination Clause to custodial interrogations by the police. The Court ruled that, in some circumstances, statements made while in custody can violate the Self-Incrimination Clause even if the statement was otherwise "voluntary" under the Due Process Clause. As the Court has more recently explained, the *Miranda* decision

> concluded that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be "accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself." [*Miranda*, 384 U.S.] at 439. Accordingly, we laid down "concrete guidelines for law enforcement agencies and courts to follow." *Id.*, at 442. Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of any attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires." *Id.*, at 479.

*Dickerson v. United States*, 530 U.S. 428, 435 (2000) (parallel citations omitted). The *Miranda*

---

witness testifies that a statement was made, rather than about the truth of the statement itself, the testimony is not hearsay.").

10

Court explained that if the suspect indicates that he wishes to remain silent, "the interrogation must cease." *Miranda*, 384 U.S. at 474.

Several years after *Miranda*, the Court elaborated on the right to counsel component of *Miranda* in *Edwards v. Arizona*, 451 U.S. 477 (1981). In that case, the Court explained that counsel can be waived under *Miranda* only if the waiver is both knowing and intelligent. The Court explained that "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Edwards*, 451 U.S. at 485. Accordingly, the Court held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. The Court further held that a suspect, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85.

Although it has been characterized otherwise at times, the rule of *Miranda* is of federal constitutional dimension. *See Dickerson*, 530 U.S. at 438-40. Thus, claims based on the right to counsel at questioning recognized in *Miranda* are cognizable on habeas review. *See id.* at 439 n.3; *Thompson v. Keohane*, 516 U.S. 99, 107 n.5 (1995).

    2.    *Analysis*

Here, the Court should conclude that an evidentiary hearing is necessary to resolve petitioner's *Miranda* claim. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) whether an evidentiary hearing is

necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2).

Taking the latter issue first, an evidentiary hearing is permitted in this case under § 2254(e)(2). That section provides that, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is permissible because petitioner has not "failed to develop the factual basis" of *Miranda* claim. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[3] the Court explained that Congress's use of the term "'failed to develop' implies some lack of diligence[.]" *Id*. at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432. Here, petitioner attempted to introduce Bradley's testimony concerning his request for a lawyer, but the prosecutor's objection to that evidence was sustained by the trial court. He thus did not exhibit a lack of diligence in his attempt to secure Bradley's testimony on this issue. Accordingly, an evidentiary hearing is permissible under § 2254(e)(2).

Further, the Court should conclude that an evidentiary hearing is necessary under Rule 8. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have

---

[3]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d). Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). Here, an evidentiary hearing would have the potential to advance petitioner's claim. His claim is dependent upon two factors: (1) whether he actually requested counsel during the interview at the Burger King; and (2) whether he was in custody at that time.[4] The second question was simply not answered by the trial court or the Michigan Court of Appeals, because the issue was irrelevant once the trial court determined that petitioner had not, in fact, requested counsel.

As to the first question, Bradley's testimony is critical to the determination of whether petitioner in fact requested counsel. The trial court was presented with only two versions of events: that of the officer and that of the accused. In these circumstances, the testimony of an at least

---

[4]The *Miranda* rule is based on the notion that "custodial police interrogation, by its very nature, isolates and pressures the individual," and therefore "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself.'" *Dickerson*, 530 U.S. at 435 (quoting *Miranda*, 384 U.S. at 439). To guard against this, *Miranda* "laid down 'concrete guidelines for law enforcement agencies and courts to follow.'" *Id*. (quoting *Miranda*, 384 U.S. at 442). This rationale for the rule, however, also limits its applicability to only those interrogations which are "custodial." *See Thompson*, 516 U.S. at 102; *California v. Beheler*, 463 U.S. 1121, 1124 (1983) (per curiam); *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (per curiam). "Custody for *Miranda* purposes has been . . . narrowly circumscribed." *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984). As the Court explained in *Miranda*, an interrogation is custodial only where the suspect "has been taken into custody or otherwise deprived of is freedom of action in any significant way." *Miranda*, 384 U.S. at 444. In other words, although a court must consider the totality of the circumstances surrounding the interrogation, the ultimate inquiry is whether there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Murphy*, 465 U.S. at 430 (internal quotation omitted); *see also*, *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam); *Beheler*, 463 U.S. at 1125. Here, even if Bradley's and petitioner's statements that petitioner requested counsel are taken as true, it is still unclear when this request was made and whether petitioner was in custody at that time. These issues thus need to be explored at the evidentiary hearing.

somewhat detached observer may have had a significant impact on the court's credibility determination. Because the trial court did not consider Bradley's testimony, the court's credibility determination is not entitled to a presumption of correctness. *See Williamson v. Ward*, 110 F.3d 1508, 1521 (10th Cir. 1997) ("Because the state court's treatment of [petitioner's claim] was based on an incomplete view of the record, we do not accord its fact findings on the issue any deference."); *see also*, *Guidry v. Dretke*, 397 F.3d 306, 324 (5th Cir. 2005), *cert. denied*, ___ S. Ct. ___, 2006 WL 262700 (Mar. 20, 2006).

Nor can it be said that an evidentiary hearing is not necessary based on the Michigan Court of Appeals's determination that the error in excluding Bradley's testimony was harmless. The court of appeals came to this conclusion on the basis that Bradley did interject that petitioner had requested an attorney. This conclusion is flawed, for two reasons. First, although Bradley did interject this statement, it was an isolated statement which counsel was not permitted to explore in any fashion. Thus, the trial judge heard no testimony from Bradley on the exact nature of petitioner's request for counsel, the circumstances in which it was uttered, or Officer Allen's response. Second, and more fundamentally, the trial court had already ruled that any testimony from Bradley relating to petitioner's request for an attorney was inadmissible. Implicit in the court of appeals's harmless error conclusion is the assumption that, because the trial judge heard Bradley's interjection, he must have considered it in making his determination. The law, however, presumes precisely the opposite. "Trial courts are presumed to consider only properly admitted and relevant evidence in rendering its [sic] decision and to give no weight to improper testimonial evidence, which is taken under objection." *West v. Jones*, No. 04-CV-40199, 2006 WL 508652, at *3 (E.D. Mich. Feb. 28, 2006) (Gadola, J.) (citing *United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir.

14

1972)); *see also*, *Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). Michigan courts follow the same presumption. *See People v. Taylor*, 245 Mich. App. 293, 305, 628 N.W.2d 55, 62 (2001); *People v. Jones*, 168 Mich. App. 191, 194, 423 N.W.2d 614, 615 (1988). Thus, it was unreasonable for the Michigan Court of Appeals to assume that the trial court had considered Bradley's statement about petitioner's request for an attorney and rejected that testimony.

Thus, petitioner attempted to introduce relevant and admissible evidence relevant to his *Miranda* claim, but was precluded from doing so by the trial court. And, this evidence is necessary for a full consideration of petitioner's *Miranda* claim. Accordingly, the Court should hold an evidentiary hearing on petitioner's *Miranda* claim pursuant to Rule 8. If the Court accepts this recommendation, the Court must appoint counsel for petitioner, *see* Rule 8(c), and the Court may either conduct the hearing itself or refer the matter back to me to conduct the hearing and prepare a further recommendation, *see* Rule 8(b).

E.   *Ineffective Assistance of Counsel Claim (Claim II)*

Petitioner also contends that his trial counsel was ineffective for failing to move to suppress his statements to the police based on the delay between his arrest and arraignment. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.   *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

15

Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.  *Analysis*

Petitioner cannot show that counsel was ineffective for failing to file a motion to suppress his statement on the basis that it was obtained in violation of his right to a speedy arraignment. Petitioner's claim is based on the Supreme Court's decision in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). In that civil rights case under 42 U.S.C. § 1983, the Court held that the Constitution requires a defendant be given a reasonably prompt probable cause determination (such

16

as arraignment) following his arrest, and that a delay in arraignment greater than 48 hours after arrest is presumptively unreasonable. *See id*. at 55-58. While there was unquestionably a *McLaughlin* violation here, however, petitioner cannot show a reasonable probability that a motion to suppress his statements on this basis would have been successful. The Supreme Court has explicitly declined to rule on the appropriate remedy for a *McLaughlin* violation, *see Powell v. Nevada*, 511 U.S. 79, 84 (1994), and the Michigan courts have held that suppression of a statement is not *per se* required for a *McLaughlin* violation. *See People v. Manning*, 243 Mich. App. 615, 636-44, 624 N.W.2d 746, 756-60 (2000). Rather, the existence of a delay is merely a factor to be considered in determining whether a statement was voluntary. *See id*. Thus, the existence of a *McLaughlin* violation alone does not require suppression of a custodial statement given after arrest but before arraignment. While petitioner argued that his statements were involuntary in the state courts, the Michigan Court of Appeals rejected this claim, *see Davis*, 2002 WL 1747966, at *2, slip op. at 2-3, and petitioner does not challenge the court's resolution of this issue here. Thus, there is not a reasonable probability that a motion to suppress the statements on the basis of prearraignment delay would have been successful. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Conclusion*

In view of the foregoing, the Court should conclude that petitioner is not entitled to habeas relief on his second claim, alleging ineffective assistance of counsel, and the Court should deny the petition with respect to this claim. The Court should also conclude, however, that an evidentiary hearing is necessary to resolve petitioner's first claim, alleging a violation of his rights under *Miranda*. Accordingly, the Court should appoint counsel for petitioner and conduct an evidentiary

hearing on this claim pursuant to Rule 8, 28 U.S.C. foll. § 2254.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 3/29/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 29, 2006.
>
> s/Eddrey Butts  
> Case Manager